UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 22-cv-01081-NYW-STV

ESTATE OF TYLER KRACHT, by and through its personal representative Jennifer Custer,

　　Plaintiff,

v.

CITY OF STERLING, COLORADO, and
OFFICER AUSTIN MOLCYK, in his individual and official capacity,

　　Defendants.

## ORDER ON MOTION TO DISMISS

This matter comes before the Court on Defendant City of Sterling Motion to Dismiss (the "Motion" or "Motion to Dismiss") [Doc. 16]. Upon review of the Motion and the related briefing, the applicable case law, and the entire docket, the Motion to Dismiss is **GRANTED.**

### BACKGROUND

The following facts are drawn from the operative Complaint [Doc. 1] and the Court presumes they are true for the purposes of the Motion to Dismiss. The Estate of Tyler Kracht ("Plaintiff" or "the Estate") brings this civil action against the City of Sterling ("Defendant Sterling" or "City") for alleged violations of his constitutional rights. *See generally* [*id.*]. On the afternoon of May 3, 2020, Sterling Police Department ("SPD") officers were involved in a vehicular high-speed chase of Tyler Kracht ("Mr. Kracht"). [*Id.* at ¶ 14]. While SPD Officer Austin Molcyk ("Defendant Molcyk" or "Officer Molcyk") continued pursuit of Mr. Kracht, the rest of the SPD officers involved in the chase stopped pursuit "for their own safety." [*Id.* at ¶¶ 14-15]. As the distance between the two vehicles closed, Officer Molcyk drew his handgun

and pointed it through his windshield at Mr. Kracht. [*Id.* at ¶ 17]. Plaintiff alleges that Mr. Kracht did "not present a weapon or reach for one." [*Id.* at ¶ 18]. To stop Mr. Kracht, Officer Molcyk "swerved his vehicle" and "initiated a head-to-head collision between the two cars." [*Id.* at ¶¶ 15, 19]. Plaintiff alleges that Officer Molcyk's maneuver was "in violation of SPD policy and in blatant disregard for his own safety and that of Mr. Kracht." [*Id.* at ¶ 19]. While the collision "shook" Officer Molcyk's vehicle, it "did far more damage" to Mr. Kracht's car: the "left front end" was "entirely caved in," and the front driver's side wheel had been "detached entirely from its axle." [*Id.* at ¶¶ 20-21].

Following the collision, Officer Molcyk exited his own vehicle and ran towards Mr. Kracht's car. [*Id.* at ¶ 22]. Subsequently, the wheels on Mr. Kracht's car spun, but "gained no traction," and the car remained still. [*Id.* at ¶¶ 23-24]. Plaintiff alleges that it was "obvious" that the car was disabled. [*Id.*]. Officer Molcyk then began delivering commands as he approached Mr. Kracht's vehicle, demanding that Mr. Kracht "raise his hands." [*Id.* at ¶¶ 25-26]. Mr. Kracht raised his hands as additional SPD officers arrived, all holding Mr. Kracht at gunpoint. [*Id.* at ¶¶ 26-28]. Plaintiff alleges that Officer Molcyk and another officer "simultaneously shouted conflicting orders at Mr. Kracht" and that SPD officers further "impeded their communications" by delivering simultaneous and conflicting demands of what Mr. Kracht should do with his hands. [*Id.* at ¶¶ 30, 32-34]. Mr. Kracht "advised the officers that his door was stuck" and asked them not to shoot. [*Id.* at ¶¶ 36-37].

Shortly after the crash, Logan County Sheriff's Deputy Casey Swingle ("Deputy Swingle") arrived on scene to find three SPD officers holding Mr. Kracht at gunpoint, with Officer Molcyk positioned near Mr. Kracht's rear driver's side window, aiming his gun at the back of Mr. Kracht's head. [*Id.* at ¶¶ 38-39]. SPD officers shouted for Deputy Swingle to "use

his baton to break out a window on Mr. Kracht's vehicle." [*Id.* at ¶ 40]. When Deputy Swingle walked toward the "disabled car," Mr. Kracht's car tires spun again. [*Id.* at ¶ 41]. While approaching, Deputy Swingle dropped his baton and turned to retrieve it. [*Id.* at ¶ 43]. At this point, Officer Molcyk "unloaded his handgun into the back of Mr. Kracht's head and neck," firing seven shots, six of which struck Mr. Kracht. [*Id.* at ¶¶ 6, 44]. No other officers fired their weapons. [*Id.* at ¶ 45]. Even though SPD officers pulled Mr. Kracht from his car to save his life, Mr. Kracht died moments later. [*Id.* at ¶¶ 52-53].

Plaintiff alleges that after the incident, Officer Molcyk "falsely" told police investigators that he fired his gun because believed Mr. Kracht was attempting to strike Deputy Swingle with his car. [*Id.* at ¶ 46]. Plaintiff states that Mr. Kracht did not "brandish or otherwise present a weapon" throughout this entire interaction and that no law enforcement officer observed Mr. Kracht to be in possession of a firearm on May 3, 2020. [*Id.* at ¶¶ 47-49].

Plaintiff filed this case against Defendant Sterling and Officer Molcyk, in his individual and official capacities, on May 2, 2022, raising a Fourth Amendment excessive force claim under 42 U.S.C. § 1983. The City filed its Motion to Dismiss on July 25, 2022, arguing that Plaintiff fails to state a claim under Rule 12(b)(6).[1] *See generally* [Doc. 16]. Plaintiff has responded in opposition to the Motion, *see* [Doc. 22], and the City has since replied. [Doc. 25]. The matter is thus ripe for adjudication.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these

---

[1] Officer Molcyk answered the Complaint on August 5, 2022. *See* [Doc. 17].

allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). The Court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

The City argues in its Motion to Dismiss under Rule 12(b)(6) that Plaintiff's allegations are insufficient to establish the City's liability for Officer Molcyk's actions; specifically, that Plaintiff fails to allege sufficient facts to state a claim for municipal liability. *E.g.*, [Doc. 16 at ¶¶ 12, 23]. Plaintiff disagrees, asserting that its allegations are sufficient to establish the City's liability. [Doc. 22 at 4-10]. The Court addresses the Parties' arguments below.

**I.     Standard for Municipal Liability for Constitutional Torts**

Government entities can be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "[I]t is when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. "To establish municipal liability under § 1983, Plaintiff must prove a constitutional violation by the individual officers. In other words, 'absent a constitutional violation by the individual police officers whose conduct directly caused plaintiffs' injuries, there can be no municipal liability.'" *Est. of Ronquillo by and through Est. of Sanchez v. City and Cnty. of Denver*, 720 F. App'x 434, 441 (10th Cir. 2017) (quoting *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1156 (10th Cir. 2001)).

A plaintiff suing a municipality under § 1983 for the acts of a municipality employee must allege: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998). In addition to plausibly alleging that Defendant Sterling committed a constitutional violation, Plaintiff must also allege sufficient facts to demonstrate that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). A municipal policy or custom can take the form of:

> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotations and citations omitted).

## II.  Plaintiff's Municipal Liability Claim

In its § 1983 claim, Plaintiff states that Officer Molcyk's alleged disregard of Mr. Kracht's Fourth Amendment rights was under the "preexisting and ongoing deliberately indifferent custom, policy, practice, training and supervision of Sterling." [Doc. 1 at ¶ 60]. The City does not argue that Plaintiff has failed to allege a constitutional violation, *see generally* [Doc. 16], and thus, the Court assumes that Plaintiff has sufficiently alleged a constitutional violation for the purposes of this Motion.  Instead, Defendant Sterling argues for dismissal based on the Estate's failure to allege that a municipal policy or custom was the moving force behind the Fourth Amendment violation, thus failing to sufficiently plead a § 1983 claim. [Doc. 16 at ¶¶ 6, 19, 23, 26].  *See Jiron*, 392 F.3d at 419.

In the Complaint, Plaintiff alleges that municipal liability is plausible under two theories: (1) "[i]t is the custom and actual practice of [the Sterling Police Department] to engage in, encourage, and condone the use of excessive force by SPD officers" as evidenced by the ratification of Officer Molcyk's conduct, [Doc. 1 at ¶¶ 56, 59][2]; and (2) that Sterling "created and tolerated a custom of deliberate indifference and failed to adequately supervise and train [its] officers in the constitutional use of deadly force."[3]  [*Id.* at ¶ 62].  Defendant Sterling argues that Plaintiff has failed to plausibly allege facts demonstrating a custom or practice through both the ratification and failure to train theories.  [Doc. 16 at ¶¶ 19, 23, 26].  The Court will address each of Plaintiff's theories in turn.

---

[2] Paragraph 59 is repeated on page 9 of Plaintiff's Complaint; this citation refers to the second Paragraph 59 on page 9.

[3] The Court does not construe Plaintiff's allegations as an informal custom or practice theory of municipal liability because Plaintiff does not explicitly allege it in the Complaint, nor is it addressed in Plaintiff's response to the Motion.

### A.     Ratification

Plaintiff alleges that Defendant Sterling ratified Officer Molcyk's conduct, which demonstrates that Officer Molcyk acted pursuant to the City's policy, custom, and practice. [Doc. 1 at ¶¶ 59-60]. Specifically, Plaintiff alleges that the City did not terminate, discipline, or counsel Officer Molcyk after Mr. Kracht's death and has instead taken the official position that Officer Molcyk's conduct was appropriate. [*Id.*]. According to Plaintiff, had Officer Molcyk's conduct been outside of the City's custom or policy, disciplinary, or remedial action would have been taken. [*Id.* at ¶ 59].[4] In the Motion to Dismiss, Defendant Sterling argues that Plaintiff has failed to demonstrate a policy, custom, and practice claim through ratification. Defendant appears to raise two arguments: (1) Plaintiff has failed to assert that any final decisionmaker knew of Officer Molcyk's alleged unconstitutional actions and ratified the basis for those actions, [Doc. 16 at ¶¶ 12-13, 17-18]; and (2) Plaintiff has not asserted a plausible causal link between any purported ratification and the alleged unconstitutional actions of Officer Molcyk. [*Id.* at ¶¶ 16-17].

In response, Plaintiff asserts that assessing the municipality's response to the shooting can indicate whether the officer's conduct was "pursuant" to the municipality's customary practice. [Doc. 22 at 8]. Plaintiff contends that the City's "unequivocal condoning of [Officer] Molcyk's killing of Mr. Kracht" strongly supports the existence of the City's unconstitutional customs, practices and polices that caused Officer Molcyk to violate Mr. Kracht's rights. [*Id.* at 7]. Taking Plaintiff's allegations as true, the Court respectfully finds that Plaintiff has not sufficiently pled municipal liability under a ratification theory.

A municipality may be liable for an employee's unconstitutional conduct under § 1983 if

---

[4] Paragraph 59 is repeated on page 9 of Plaintiff's Complaint; this citation refers to the second Paragraph 59 on page 9.

it ratifies that employee's unconstitutional conduct. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009). For a claim based on a ratification theory to withstand dismissal, a plaintiff must sufficiently allege that the "subordinate's position is subject to review by the municipality's authorized policymakers, . . . [and that] the authorized policymakers approve[d] a subordinate's decision and the basis for it." *Melton v. City of Okla. City*, 879 F.2d 706, 724 (10th Cir. 1989) (quoting *Praprotnik*, 485 U.S. at 127), *modified on other grounds*, 928 F.2d 920, 922 (10th Cir. 1991) (en banc) (explicitly leaving panel's judgment on § 1983 liability intact)). Additionally, "proof of a single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability, and where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Moss*, 559 F.3d at 1169. Furthermore, events that occur after the incident at issue fail to demonstrate a theory of ratification unless the later incident was a subsequent cover-up of municipality policy. *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009).[5]

In support of the ratification claim, Plaintiff alleges that Defendant Sterling "did not terminate[,] . . . discipline" or even counsel Officer Molcyk for his actions on May 3, 2020.

---

[5] To the extent that Plaintiff offers SPD's condoning of Officer Molcyk's shooting and killing of another man in October 2020 as evidence of ratification, *see* [Doc. 1 at 9, ¶¶ 61, 57-58], Plaintiff clarifies in its response that it is not intended to demonstrate ratification. [Doc. 22 at 9]. Rather, this allegation serves as an informal indication of Defendant Sterling's customs and policies regarding the use of deadly force. [*Id.*]. In any event, ratification cannot be based on the actions taken after the alleged unconstitutional conduct. *See Cordova*, 569 F.3d at 1194 ("basic principals of linear time prevent us from seeing how conduct that occurs after the alleged violation could have somehow caused that violation"). A ratification theory of municipal policy is based on knowledge and notice of an "employee's *specific* unconstitutional actions, as well as the basis for these actions." *Bryson*, 627 F.3d at 790 (emphasis added).

[Doc. 1 at ¶ 59].[6]  Plaintiff asserts that the City's "official" position in the aftermath of Mr. Kracht's death was that Officer's Molcyk's "conduct was appropriate."  [*Id.* at 9, ¶ 60].

However, Plaintiff has failed to allege with any specific details that anyone in general, let alone anyone with policymaking authority, affirmatively approved of Officer Molcyk's actions. *See* [Doc. 1 at ¶¶ 59-61].[7]  This omission is fatal to Plaintiff's theory of ratification.  *See Twitchell v. Hutton*, No. 10-cv-01939-WYD-KMT, 2011 WL 318827, at *5 (D. Colo. Jan. 28, 2011) ("I find the Plaintiff's Complaint fails to allege any facts regarding an affirmative approval of Hutton's actions, which is required in order to establish municipal liability under § 1983 under a ratification theory." (citing *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F 3d 1175, 1189 (10th Cir. 2010)); *see also Moss*, 559 F.3d at 1169 (finding that plaintiffs did not state a claim against a city in part because it did not allege that city' policymaker approved the alleged unconstitutional conduct).  Instead, Plaintiff alleges that Officer Molcyk's "conduct was engaged in pursuant to policy, custom and practice of Sterling" and had it been "outside of policy, disciplinary or remedial action would have been taken."  [Doc. 1 at ¶ 59].[8]  However, "mere acquiescence in a single discretionary decision by a subordinate is not sufficient to show ratification."  *Boudette v. Buffington*, No. 18-cv-02420-CMA-MEH, 2020 WL 6119521, at *11 (D. Colo. Feb. 21, 2020), *report and recommendation adopted*, 2020 WL 4593220 (D. Colo. Aug. 11, 2020) (citing *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993)).

Furthermore, Plaintiff does not allege that the *basis* for Officer Molcyk's conduct was

---

[6] Paragraph 59 is repeated on page 9 of Plaintiff's Complaint; this citation refers to the second Paragraph 59 on page 9.

[7] Paragraph 59 is repeated on page 9 of Plaintiff's Complaint; this citation refers to the second Paragraph 59 on page 9.

[8] Paragraph 59 is repeated on page 9 of Plaintiff's Complaint; this citation refers to the second Paragraph 59 on page 9.

also approved by the City. *See Rehberg v. City of Pueblo*, No. 10-cv-00261-LTB-KLM, 2012 WL 1326575, at *6 (D. Colo. Apr. 17, 2012) (finding the plaintiff's allegations that a city "fail[ed] to adequately document its law enforcement officers' unconstitutional conduct" and "fail[ed] to sustain a complaint of excessive force, false[ ] arrest, or unlawful entry in the past 5.5. years" were "still wanting because [the plaintiff] [did] not allege that the basis for [the individual officers'] conduct was also approved").

Therefore, the Court finds that the Plaintiff has not adequately pled enough detailed facts to support a finding of municipal liability under a ratification theory. For these reasons, the allegations that Plaintiff proffers in support of ratification fail to "nudge[ ]" the claim "across the line from conceivable to plausible." *Robbins*, 519 F.3d at 1247. Accordingly, insofar as Plaintiff's municipal liability claim against the City is based on a ratification theory, Plaintiff fails to state a claim under Rule 12(b)(6).

### B. Failure to Train or Supervise

In the alternative, Plaintiff provides a failure to train or supervise theory of municipal liability. Specifically, Plaintiff alleges that Defendant Sterling fails to adequately train and supervise SPD officers in the constitutional use of deadly force, thus creating a custom of deliberate indifference resulting in Mr. Kracht's constitutional rights to be violated. [Doc. 1 at ¶¶ 61-63, 66].

A municipality may be liable for failing to train or supervise its employees in "limited circumstances." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). The failures to "train" or "supervise" are so similar that they are discussed together and require the same elements. *See, e.g., Bryson*, 627 F.3d at 788; *Brammer-Hoelter*, 602 F.3d at 1189-90. In fact, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on

a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Okla. City v. Tuttle*, 471 U.S. 808, 822–23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' is 'far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*."). To state a § 1983 claim based on the failure to train or supervise, a plaintiff must sufficiently allege that the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389.

"Deliberate indifference" is an exacting standard of fault. *See Bryan Cnty. Bd. of Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). It requires showing that a municipal actor disregarded a known or obvious consequence of his action. *Id.* "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61. "Deliberate indifference" for purposes of failure to train or supervise ordinarily necessitates showing a pattern of similar constitutional violations by untrained employees. *See Bryan Cnty.*, 520 U.S. at 409. "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). "Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Connick*, 563 U.S. at 62

11

(quotation omitted). But "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* "Notice of particular deficiencies in a training program is the crux of a failure-to-train theory." *Est. of Lobato by & through Montoya v. Correct Care Sols., LLC*, No. 15-cv-02718-PAB-STV, 2017 WL 1197295, at *7 (D. Colo. Mar. 31, 2017).

Plaintiff contends that Defendant Sterling's failure to institute policies or training that provided SPD officers with constitutional guidance on the use of deadly force caused Officer Molcyk to violate Mr. Kracht's Fourth Amendment Rights. [Doc. 1 at ¶ 66]. In support of this failure-to-train theory, Plaintiff alleges that (1) the SPD has a higher number of police killings than 94% of Colorado police departments, [*id.* at ¶ 57]; (2) the SPD had more police shootings per arrest than 54% of Colorado police departments from 2016 to 2020, [*id.* at ¶ 58]; (3) the City provided no additional training to SPD officers after Mr. Kracht's death, [*id.* at ¶ 59]; and (4) in October 2020, "act[ing] in the precise manner that SPD had trained him," Officer Molcyk shot and killed another man." [*Id.* at ¶ 61]. Defendant argues that Plaintiff has not plausibly alleged a failure to train or supervise claim. Defendant appears to make three arguments: (1) Plaintiff has failed to demonstrate that the particular policy in question was enacted or maintained with deliberate indifference to almost inevitable constitutional injury, [Doc. 16 at ¶¶ 22-23]; (2) Plaintiff has not plausibly alleged any particular deficiency in the City's training or supervision program, [*id.* at ¶¶ 25-27]; and (3) Plaintiff fails to allege how two statistics were sufficient to put the City on notice of any unconstitutional conduct. [*Id.* at ¶¶ 14-15].[9]

---

[9] Although Defendant Sterling raised this argument in the context of ratification, the Court finds that this argument fits more appropriately under the failure to train theory. "Notice" is a critical component of deliberate indifference which is the legal standard for a failure to train claim under

In response, Plaintiff argues that the City knew that the use of force in arresting fleeing felons was fundamental to a police officer's job, and the failure to properly train its officers in using firearms in such situations constitutes deliberate indifference to Mr. Kracht's constitutional rights.  [Doc. 22 at 5-6].  Viewing these allegations in the light most favorable to the Plaintiff, the Court finds that the Plaintiff has not sufficiently pled municipal liability under a training, supervision, and discipline theory.

The Court concludes that these general allegations fail to sufficiently state a municipal liability claim under a failure to train or supervise theory.  The Complaint contains no specific factual allegations which plausibly establish that Defendant Sterling had actual or constructive notice that its current training policies, or any lack of training or supervision, was substantially certain to result in a constitutional violation.  *See generally* [Doc. 1].  Moreover, Plaintiff does not proffer any specific facts regarding the SPD officers' training or supervision—for instance, "how the individual defendants were trained, who they were trained by, why their training was deficient, or what the City's training includes and how it has changed since the alleged pattern began."  *Cook v. Whyde*, No. 20-cv-02912-PAB-STV, 2021 WL 4459051, at *16 (D. Colo. Sept. 29, 2021) (citing *Bark v. Chacon*, No. 10-cv-01570-WYD-MJW, 2011 WL 1884691, at *3 (D. Colo. May 18, 2011)).  This alone is fatal to Plaintiff's failure-to-train claim.  *See Connick*, 563 U.S. at 61 (notice of particular deficiencies in a training program is the crux of a failure-to-train theory).  Instead, Plaintiff alleges the formulaic recitation of the elements of a failure-to-train claim: that the City was deliberately indifferent to causing constitutional right violations.  [Doc. 1 at ¶¶ 62-63, 83-85].  However, these conclusory assertions are insufficient to meet the pleading standard laid out in *Ashcroft*.  *Ashcroft*, 556 U.S. at 678.

---

§ 1983.  *Connick*, 563 U.S. at 62.

Furthermore, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62. Because the statistics do not provide any context or details on how a Defendant Sterling's failure to train was *substantially certain* to result in officers' unconstitutional conduct, the statistics fail to put the City on actual or constructive notice of a pattern of unconstitutional conduct. *See id.*; *see also Rodriguez v. Chavez*, No. 12-cv-01071-PAB-MJW, 2014 WL 4627274, at *5 (D. Colo. 2014) (the statistics that the plaintiff relied upon did not include supporting facts that indicated that the defendant was put on notice that a constitutional violation was "substantially certain to result"). In fact, the statistics fail to demonstrate "a continuing, persistent and widespread practice of unconstitutional misconduct" by the City of Sterling or even a widespread unconstitutional practice among other SPD officers. *Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cnty.*, 996 F.2d 1035, 1041 (10th Cir. 1993). The Court finds it unconvincing that two statistics and a subsequent shooting by the same officer in October 2020—alleged without any context and further details—are adequate to demonstrate that Defendant Sterling was given sufficient notice of unconstitutional conduct by untrained employees and therefore was deliberately indifferent towards constitutional violations. *Cf. Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (rejecting Plaintiff's *Monell* discrimination claim based on statistical evidence because of issues with the data and a lack of analysis that did not clearly eliminate nondiscriminatory explanations for the disparity).

Accordingly, the Court finds that Plaintiff has not adequately pled municipal liability for a § 1983 claim under a training, supervision, and discipline theory. *See Rehberg*, 2012 WL 1326575, at *5 (dismissing *Monell* claim where plaintiff had failed to allege specific facts regarding the officers' training and did not identify individuals that allegedly failed to adequately

14

supervise or train); *Chacon*, 2011 WL 1884691, at *3 (dismissing municipal liability claim where plaintiff had "generally allege[d]" that the individual defendants were not properly trained but had not "allege[d] specific deficiencies in training and supervision, or explain how the incident described in the Amended Complaint could have been avoided with different or better training and supervision"). The Motion to Dismiss is thus **GRANTED**, and Plaintiff's claim against the City is **DISMISSED without prejudice**.[10]

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Defendant City of Sterling, Colorado's Motion to Dismiss [Doc. 16] is **GRANTED**; and

(2) Plaintiff's claim against the City is **DISMISSED without prejudice**.

DATED: November 3, 2022        BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

[10] "[D]ismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (internal quotation marks omitted). Futility of amendment is not an issue presently before the Court; thus, the Court dismisses the claim against the City without prejudice.